### WORTHINGTON TRACTOR SALVAGE, INC., Relator,

v.

### John M. MILLER, Respondent,

### Commissioner of Economic Security, Respondent.

### No. C7–83–1709.

Court of Appeals of Minnesota.

March 14, 1984.

Jeffrey L. Flynn, Flynn & Lucht, Worthington, for relator.

John M. Miller, pro se.

Regina M. Chu, Spec. Asst. Atty. Gen., St. Paul, for respondent Com'r of Econ. Sec.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

POPOVICH, Chief Judge.

Certiorari was granted to review the decision of the representative of the Commissioner of Economic Security. The commissioner's representative granted respondent John Miller unemployment compensation benefits because he was involuntarily discharged from his employment for reasons other than misconduct under Minn.Stat. § 268.09, subd. 1(2). This appeal by the relator, Worthington Tractor Salvage, Inc., seeks to reverse the decision of the commissioner and to remand the case for further findings. We affirm in part and remand.

## FACTS

Respondent was employed by Worthington Tractor Salvage, Inc. from August 1, 1979 to April 15, 1983. Although the respondent resided in Hastings, he was hired

as a pilot for the relator, which was located in Worthington, Minnesota.

The relator claims he informed the respondent that he would be required to move from his Hastings residence to Worthington. The respondent acknowledges that the relator wanted him to move but denies that it was a condition of his employment.

The relator and respondent also disagree on whether or not time extensions to move to Worthington were granted to the respondent. Respondent insists that he never requested a time extension and that such an extension was not needed.

The relator asserts that Miller requested several time extensions. The first request was made when the respondent began to work for the company. He requested that the relocation date be delayed until the end of the 1980 school year because his wife was teaching school. Upon completion of the 1980–81 school year, respondent did not relocate as anticipated by the relator. Instead, he remained in Hastings. The second request was for a delay until the summer of 1981 so that Miller's wife could become tenured. Both of these requests were granted by the relator.

During the 1981–82 year nothing occurred. In June of 1982 respondent bought a doughnut shop. He asked his supervisor if he could remain in Hastings until December, 1982 to get his new business going. This extension was granted.

During his three and a half years of employment, respondent continued to live in Hastings and commute to Worthington when a flight was scheduled, taking approximately four hours to drive the 180 miles between the two cities.

Relator contends that because respondent resided in Hastings, the company was inconvenienced and flights were missed. The relator also claims that the respondent's involvement with his doughnut shop exacerbated the problem because he was difficult to reach by phone.

The relator documented only one missed flight. On March 21, 1983 the respondent was to pilot a plane out of Worthington at 8:00 A.M. He did not report for duty until 3:30 P.M. The relator then insisted the respondent would have to move immediately to Worthington. The respondent did not move after the relator's request.

On April 8, 1983, the company plane's engine became irreparable through no fault of the employee. It was approximately at this time that the respondent was terminated due to his failure to move to Worthington. Respondent was paid until April 15, 1983.

Respondent applied for unemployment compensation benefits. The claims deputy for the Department of Economic Security determined that the respondent was entitled to receive benefits. On appeal, a department appeal tribunal affirmed, rejecting relator's argument that the respondent was discharged for misconduct under Minn. Stat. § 268.09, subd. 1(2).

The relator then appealed to the Commissioner of Economic Security, challenging the appeal tribunal's ruling on the ground that the findings of fact by the referee were not in accordance with the testimony or the law. The relator requested in the notice of appeal that the commissioner take additional evidence and make additional findings of fact. In the written memorandum submitted in support of the appeal to the commissioner, the relator requested that the case be remanded for the taking of additional evidence. Attached to the notice of appeal was an affidavit of the employee's supervisor alleging the employee had been fully self-employed from April 15, 1983.

## ISSUES

1. Whether the evidence reasonably supports the representative of the commissioner's decision that the employee was involuntarily unemployed for reasons other than misconduct under Minn.Stat. § 268.09, subd. 1(2)?

2. Whether the case should be remanded for the taking of additional evidence and new findings pursuant to Minn.Stat. § 268.-

10, subd. 5 regarding the self-employment of the employee and lack of eligibility for benefits?

## ANALYSIS

A reviewing court's scope of review of the Commissioner of Economic Security's decisions is limited to consideration of:

[W]hether the department kept within its jurisdiction; whether it proceeded on an erroneous theory of law; whether its action was so arbitrary and unreasonable that it represents its will and not its judgment; or whether the decision of the department is without evidence to support it.

*Johnson v. Wilson & Co.,* 266 Minn. 500, 507, 124 N.W.2d 496, 501 (1964); *Lumpkin v. North Central Airlines, Inc.,* 266 Minn. 456, 460, 209 N.W.2d 397, 400 (1973); *King v. Little Italy,* 341 N.W.2d 896 (Minn.App. 1984). Accordingly, this Court must decide if the evidence supports the representative of the commissioner's finding that the respondent was not disqualified from unemployment benefits for his failure to move to Worthington.

### 1. *Misconduct*

The relator claims that the respondent's failure to move to Worthington constitutes misconduct disqualifying the respondent from receiving unemployment benefits under Minn.Stat. § 268.09, subd. 1.

Minn.Stat. § 268.09, subd. 1 (1982) in part provides:

An individual separated from employment under Clauses * * * 2 * * * shall be disqualified for waiting week credit and benefits until 4 calendar weeks have elapsed following his separation and he has earned four times his weekly benefit amount in insured work.

\* \* \* \* \* \*

(2) The individual was discharged for misconduct * * * connected with his work or for misconduct which interferes with and adversely affects his employment.

In *King v. Little Italy,* 341 N.W.2d 896, 898 (Minn.App.1984) this Court adopted the construction of the term "misconduct" that was set forth in *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 204 N.W.2d 644, 646 (1973). The *Tilseth* construction of "misconduct" provides:

[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has a right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct.'

The appeals tribunal applied the *Tilseth* rule and found that the respondent had been terminated involuntarily and the relator had not proved willful misconduct. The commissioner's representative affirmed.

■ The employer has the burden of proving disqualification from benefits under Minn.Stat. § 268.09. *Plowman v. Copeland, Buhl & Co., Ltd.,* 261 N.W.2d 581, 585 (Minn.1977). Relator has not met this burden. Although the relator repeatedly requested the respondent to move to Worthington, the relator's acquiescence and granting of extensions to the respondent makes it difficult for this Court to hold that the respondent "willfully and wantonly" disregarded the relator's standards and expectations. Furthermore, there was not sufficient evidence that the respondent's Hastings residence substantially interfered with the quality of his work. Relator documented only one flight missed due to the respondent's Hastings residence.

Applying the standard of review adopted by this Court in *King v. Little Italy, supra,* the commissioner's decision should be affirmed. Although the evidence substantiates the relator's frustration with the respondent's residential absence from Worthington, it cannot be said that the commissioner's decision is "without evidence to support it." Nor can it be said that the decision is so unreasonable that it represents the department's will and not its judgment. *Johnson v. Wilson & Co.,* 266 Minn. 500, 507, 124 N.W.2d 496, 501 (1964); *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 460, 209 N.W.2d 397, 400 (1973).

### 2. *Eligibility for Unemployment Benefits*

The relator requests this Court to remand for further proceedings on the issue of respondent's self-employment and consequent disqualification

Minn.Stat. § 268.10, subd. 5 (1982) provides:

Upon review, the commissioner or his duly authorized representative may affirm, modify, or set aside any finding of fact or decision, or both, of the appeal tribunal on the basis of the evidence previously submitted in such case, or remand such matter back to the appeal tribunal for the taking of additional evidence and new findings and decision based on all of the evidence before it.

The relator had requested the commissioner to remand because he believes the respondent has been fully employed since April 15, 1983. The relator's memorandum to the commissioner stated that the relator had two statements from doughnut shop employees supporting the claim that the respondent was employed.

In addition to the formal request for a remand, relator's notice of appeal to the commissioner was accompanied by an affidavit of relator's president alleging that the respondent had been fully employed since April 15, 1982. The appeal tribunal hearing record contains testimony that the respondent was working at the doughnut shop.

Minn.Stat. § 268.08, subd. 1(3) on eligibility for unemployment compensation benefits requires that an employee be available to work. The Department of Economic Security promulgated rules defining availability for work, both generally and in regard to self-employment:

*Generally.* * * * [A] claimant is considered available for work only if he is ready and willing to accept full-time suitable work. There must be no restrictions, either self-imposed or created by circumstances which prevent accepting full-time work. A restriction does not prevent accepting full-time work if there are favorable prospects for obtaining full-time work with the restrictions within in a reasonable period of time.

\*    \*    \*    \*    \*    \*

Self-employment. A claimant is not available for work if he is self-employed and no longer seeking other suitable work or if he is planning to become self-employed and will not accept other suitable work.

8 M.C.A.R. § 4.3004 A, K (1982).

The commissioner should have known that the issue merited his consideration. The record is silent as to whether such consideration was given. The commissioner made no findings of fact on the employee's employment status. The record is incomplete and does not cover the evidence presented during the oral argument to the commissioner. The commissioner's decision simply adopted the findings of the appeal tribunal. It is doubtful that the representative of the commissioner even delved into the self-employment issue.

The determination of eligibility for unemployment compensation is based on the presumption that the employee has carried the burden of proving qualification. While the burden is on the employer to prove disqualification based on misconduct, the employee has the burden of proving eligibility under the unemployment statutes. *Ykovchick v. Public Schools of Mpls.,* 312 Minn. 139, 251 N.W.2d 626 (1977).

■ The record clearly reflects that the employment issue was not adequately addressed. The relator, without representation of counsel, raised the issue of the respondent's self-employment at the appeal tribunal hearing. Although the relator did not couch the issue in words that an attorney might use, the issue was easily recognizable and should have been addressed by the appeal tribunal. The lack of attention to this issue is further highlighted by the commissioner's decision which makes no reference to the relator's request. In view of the department's workload, it is imprudent for it to overlook the eligibility issue and thereby require two separate evidentiary hearings to resolve the issues raised by relator.

## DECISION

The agency must give appropriate consideration to the self-employment status of the respondent and make the necessary findings regarding this issue. We affirm the commissioner's decision that the respondent was not discharged for misconduct, but remand for further proceedings on the issue of the respondent's self-employment and disqualification for unemployment benefits.