**Rodney DAWSON, Relator,**

v.

**NORTHLAND BEVERAGES, INC., Respondent,**

**Commissioner of Economic Security, Respondent.**

No. C5-83-2017.

Court of Appeals of Minnesota.

April 24, 1984.

Terry W. Viesselman, Fairmont, for relator.

Northland Beverages, Inc., pro se.

Hubert H. Humphrey, III, State Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent Com'r of Economic Sec.

Considered and decided by POPOVICH, C.J., and PARKER and WOZNIAK, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Relator was discharged from his employment for misconduct. He filed a claim for

unemployment compensation benefits and a claims deputy for the Department of Economic Security determined that relator was discharged for misconduct and therefore disqualified from receiving benefits. The appeal tribunal reversed the claims deputy and held that relator was not discharged for misconduct. The Commissioner's representative reversed the appeal tribunal's decision, found that relator was discharged for misconduct, and was disqualified from receiving benefits pursuant to Minn.Stat. § 268.09, subd. 1(2) (1982). We affirm.

## FACTS

Relator was employed by respondent Northland Beverages, Inc., a soft drink manufacturer and wholesaler, from July 28, 1981 through May 18, 1983 as a route driver. As a route driver, relator filled pop machines and sold the company's product to retailers. He was required to follow procedures to ensure that receipts for pop cases loaded on the truck in the morning equalled the money received from consumers during the day and excess pop cases left over.

The procedure established by the employer was: 1) a co-worker and company representative counts the number of pop cases loaded on the truck in the morning; 2) the driver then signs for the number of cases on his truck; 3) at each delivery the driver completes an original invoice for company records, leaving a copy with the consumer; 4) the driver then records the delivery in his route book; 5) when the daily route is completed, each driver's remaining truckload is counted to verify that the invoices match the number of pop cases sold.

The employer claimed that relator committed three acts of misconduct. The first occurred on April 20, 1983 when, at the end of his route, relator discovered he had $71.00, the value of 10 pop cases, more than what his invoices indicated he had sold. Relator reported the excess to the warehouse supervisor but could not explain how the overage occurred.

A second overage, equivalent to the value of three pop cases, occurred on April 22, 1983. On this and the other two occasions, the inventory of relator's truck showed that relator produced invoices for the proper number of cases sold. However, a subsequent audit of relator's records disclosed a copy of an invoice for three pop cases sold to a customer on April 22. The employer claimed that, contrary to company procedure, no matching original invoice had been turned in by the relator for verification. The relator had received $21.30, which was not turned in to the employer or accounted for. Relator made no attempt to explain this incident. The Commissioner found that this was theft constituting disqualifying misconduct.

A third overage, equivalent to the value of one pop case, occurred on May 11, 1983. Relator notified the employer of this overage, turning in an invoice for the extra pop case, but when the evening inventory revealed invoices matching the number of cases delivered, relator voided the additional invoice and kept the cash.

No customer complaints were made to the employer related to any of the three overages. As a result of the errors, however, the employer discharged relator.

Upon relator's claim for unemployment compensation benefits, a claims deputy determined that he had been discharged for misconduct and was disqualified from receiving benefits. On appeal, the appeal tribunal found that the employer had not sustained its burden that relator was discharged for willful misconduct. The Commissioner's representative reversed and found that the overage on April 22, 1983 was theft and misconduct.

## ISSUE

Whether the record supports the decision of the Commissioner of Economic Security that relator was discharged for misconduct and was, therefore, disqualified from receiving unemployment compensation benefits.

## ANALYSIS

The Commissioner's representative determined that relator's actions constituted

misconduct and that he was therefore disqualified from receiving unemployment compensation benefits pursuant to Minn. Stat. § 268.09, subd. 1(2). The representative based his finding of misconduct solely on the April 22, 1983 incident.

■ This court's scope of review is limited. In an economic security case:

> The narrow standard of review requires that findings be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Center*, 332 N.W.2d 25 (Minn.1983); *see Booher v. Transport Clearings of Twin Cities, Inc.*, 260 N.W.2d 181 (Minn.1977); *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 296 (Minn.Ct.App.1984).

■ The record in this case supports the decision of the Commissioner. The inference of theft drawn by the Commissioner's representative is supported by the evidence and is a sufficient basis for a finding of misconduct as defined in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973).

## DECISION

There is sufficient and adequate evidence reasonably supporting the finding of the Commissioner's representative that relator was terminated for misconduct.

The decision of the representative of the Commissioner of Economic Security is hereby affirmed.

Affirmed.