**Joseph B. CAMPBELL, Relator,**

v.

**MINNEAPOLIS STAR & TRIBUNE CO., Respondent,**

**Commissioner of Economic Security, Respondent.**

**No. C1–83–1799.**

Court of Appeals of Minnesota.

March 21, 1984.

John H. Scanlan, St. Paul, for relator.

Patricia A. Hirl, Gen. Counsel, John Dennison, Associate Gen. Counsel, Minneapolis Star & Tribune, Minneapolis, for Minneapolis Star & Tribune.

Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

Joseph Campbell appeals the decision of the commissioner's representative disqualifying him from receiving unemployment compensation benefits because of misconduct. We affirm.

Campbell was a truck driver for the Minneapolis Star and Tribune Company. His responsibilities included counting the newspaper bundles loaded on his truck, delivering the newspapers to dealers and carriers, stacking the newspapers at delivery points

to keep weather damage to a minimum, and emptying the truck of any extra newspapers upon completion of deliveries.

Beginning in April 1979, Campbell experienced difficulty fulfilling his job responsibilities. He received over 20 verbal and written reprimands for absenteeism, tardiness, and failure to perform normal job duties. Campbell failed to stack newspapers, report for scheduled work shifts, and return the company's truck after his work shift. He also slept on the job. He was suspended without pay on two occasions and appeared before the Star and Tribune's Mutual Problems Committee six times. A final warning, dated October 26, 1982, said in part that "[a]ny further infraction of work rules or unsatisfactory performance as a driver will result in your immediate dismissal without further consideration from the Mutual Problems Committee." After committing a minimum of five more rule violations, Campbell was discharged on March 24, 1983.

The issue on appeal is whether the record supports the commissioner's representative's determination that the employee was guilty of misconduct under Minn.Stat. § 268.09, subd. 1(2) (1982). Our review is limited to an examination of "whether the commissioner's findings are reasonably sustained by the evidence, are affected by an error of law, or are arbitrary and capricious." *Salamon v. Time Share Computer Systems, Inc.,* 341 N.W.2d 300, 302 (Minn.Ct.App.1983).

This court recently analyzed the misconduct disqualification in *Flahave v. Lang Meat Packing,* 343 N.W.2d 683 (Minn.Ct.App.1984). We cited *Moeller v. Minnesota Department of Transportation,* 281 N.W.2d 879 (Minn.1979) and cases from other jurisdictions and held that an employee, discharged for failing to notify his employer of his intended absence from work on four occasions in one year contrary to employer policy, was discharged for misconduct. Misconduct occurs when an employee's conduct "evinces a willful or wanton disregard for the employer's interests or demonstrates a lack of concern by the employee for his job." *Ideker v.*

*LaCrescent Nursing Center, Inc.,* 296 Minn. 240, 241, 207 N.W.2d 713, 714 (1973). *See Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 204 N.W.2d 644 (1973).

Campbell's behavior over a period of almost four years shows repeated violations of the employer's work rules and a neglect of his job responsibilities. This demonstrates a substantial disregard of his employer's interests and a lack of concern for the duties and obligations owed to his employer. The commissioner's representative's decision is fully supported by the record.

Affirmed.