*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1023**

Ethan J. Lahn,
Relator,

vs.

Gamestop, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed February 21, 2017
Affirmed
Peterson, Judge**

Department of Employment and Economic Development
File No. 34449989-3

Ethan J. Lahn, Big Lake, Minnesota (pro se relator)

Gamestop, Inc., c/o TALX UCM Services, Inc., St. Louis, Missouri (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Hooten, Presiding Judge; Peterson, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this unemployment-compensation appeal, relator challenges a decision by an unemployment-law judge (ULJ) that he is ineligible for unemployment benefits because he was discharged for employment misconduct. Relator contends that (1) he was not aware that his conduct violated company policies, and (2) his actions did not rise to the level of misconduct. We affirm.

## FACTS

Relator Ethan Lahn began working as an associate at respondent Gamestop, Inc., a specialty retail store, in October 2015 and was later promoted to assistant store manager. When he was first hired, Lahn signed Gamestop's employee handbook, which includes a policy that prohibits Gamestop employees from performing their own Gamestop cash-register transactions. Store policy required employees to have a manager process transactions for them. The handbook also prohibited cash refunds for new merchandise that had been opened and allowed exchanges of new opened merchandise only if the product was defective.

Before becoming an assistant store manager, Lahn completed multiple training modules about handbook policies and procedures. The modules covered the policies that prohibited employees from processing their own cash-register transactions and from giving cash refunds for new merchandise that had been opened. Lahn passed quizzes that showed his knowledge of the policies and procedures, and he processed cash-register transactions for other employees' personal purchases.

2

On February 2, 2016, before the store opened, Lahn used Gamestop's cash register to process a trade-in of a pair of headsets that he owned in exchange for a store credit. After the store opened, Lahn used the store credit to buy an item. Lahn had another employee process the purchase. On February 18, 2016, Lahn returned a new, opened item that was not defective for a cash refund and had a store associate process the transaction for him. Lahn did not tell the associate that the item had been used until after the associate processed the transaction. After learning about the transactions, the store manager suspended Lahn and, following an investigation, discharged him for violating Gamestop's transaction policies.

Respondent Minnesota Department of Employment and Economic Development determined that Lahn was ineligible to receive unemployment benefits because he was discharged for employment misconduct. Lahn appealed the ineligibility determination and, following an evidentiary hearing, a ULJ determined that Lahn was ineligible to receive unemployment benefits because he was discharged for employment misconduct. The ULJ affirmed this decision on reconsideration. This certiorari appeal followed.

## D E C I S I O N

"Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 855 (Minn. App. 2014) (quotation omitted), *review denied* (Minn. July 15, 2014). Whether an employee committed a particular act is a fact question. *Id.* Whether a particular act constitutes disqualifying misconduct is a question of law, which we review de novo. *Id.* We review the ULJ's factual findings in the light most favorable

3

to the decision and defer to the ULJ's credibility determinations. *Id.* A ULJ's factual findings "will not be disturbed when the evidence substantially sustains them." *Lawrence v. Ratzlaff Motor Express Inc.*, 785 N.W.2d 819, 822 (Minn. App. 2010), *review denied* (Minn. Sept. 29, 2010).

An applicant for unemployment benefits who was discharged from employment because of employment misconduct is ineligible to receive benefits. Minn. Stat. § 268.095, subd. 4(1) (2016). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2016). Employment misconduct does not include "simple unsatisfactory conduct," "conduct that was a consequence of the applicant's inability or incapacity," or "good faith errors in judgment if judgment was required." *Id.*, subd. 6(b)(3), (5), (6) (2016). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002); *see also McDonald v. PDQ*, 341 N.W.2d 892, 893 (Minn. App. 1984) ("The employer has the right to expect scrupulous adherence to procedure by employees handling the employer's money.").

Lahn argues that the cash-return transaction was permitted by Gamestop's holiday return policy. The ULJ "did not find Lahn's testimony about a holiday return policy to be likely." The ULJ explained this finding as follows:

4

Lahn, after claiming ignorance about [Gamestop's] return policies throughout the hearing, offered less-than-certain testimony about an alleged change in [Gamestop's] return policy. According to Lahn, this change would allow a customer to return an opened item purchased during the holiday season for an unspecified time. [Gamestop's] witness convincingly testified that there was no change to the policy, with the exception of extending the period for returning eligible items to 30 days after Christmas rather than the purchase date. [Gamestop] submitted copies of its return policies, which offered detailed descriptions of the types of items that may be returned and specific periods for returning these items. Based on the detailed and specific wording of [Gamestop's] policy documents, the [ULJ] finds it unlikely that, as Lahn alleges, [Gamestop] would allow certain items sold during the holiday season to be returned after they were opened for an unspecified period. The [ULJ] found [Gamestop's] more certain witness testimony, which was supported by [Gamestop's] policy documents, regarding the return policy to be more likely than Lahn's less certain testimony to the contrary.

Lahn argues that the record provided by the employer included a receipt that showed that Gamestop's holiday return policy allowed any product in resale condition to be returned for money back. But the receipt that Lahn cites specifically states: "Product must be in resale condition. Package for new product must be unopened." Substantial evidence supports the ULJ's findings on Gamestop's holiday return policy, and those findings are contrary to Lahn's argument.

The employee handbook and the store manager's testimony about store policies and the training modules that Lahn completed support the ULJ's finding that Lahn knew or should have known that the trade-in and cash-return transactions were prohibited by Gamestop's policies. Lahn disputes the credibility of the evidence presented by Gamestop

on the training that he received on store policies and procedures, but this court defers to the ULJ's credibility determinations.

Lahn argues that, under the single-incident provision of the unemployment-compensation statute, the trade-in transaction that he processed on Gamestop's cash register was not employment misconduct. That provision states that "[i]f the conduct for which the applicant was discharged involved only a single incident, that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct." Minn. Stat. § 268.095, subd. 6(d) (2016). But the conduct for which Lahn was discharged involved the trade-in transaction and the cash-return transaction, which were two separate transactions that occurred on two different days. Therefore, the single-incident provision does not apply.

**Affirmed.**